# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                               Case No. 05-CR-19

ARIEYAH O. GOODLOW,

        Defendant.

## RECOMMENDATION TO THE HONORABLE RUDOLPH T. RANDA ON THE DEFENDANT'S MOTIONS TO SUPPRESS

On January 11, 2005, the grand jury returned a two-count indictment against the defendant, Arieyah O. Goodlow ("Goodlow"). Count one charges Goodlow with possession of a firearm, after being convicted of a crime punishable by imprisonment for a term exceeding one year, and count two charges Goodlow with intent to distribute marijuana.

Goodlow has filed a motion to suppress the firearm and marijuana specified in the indictment, which was seized on December 9, 2004, from a residence located at 320 East Chambers Street, Milwaukee, Wisconsin (the "Chambers Street residence"). In addition, Goodlow file a motion to suppress statements that he made to law enforcement officials subsequent to his arrest. On September 23, 2005, this court conducted an evidentiary hearing to address both of Goodlow's motions to suppress. The government appeared by Assistant United States Attorney Stephen A. Ingraham. Goodlow appeared in person and by Attorney Robert W.

1

Keller. Testimony was presented on behalf of the government by Milwaukee Police Officers Jose Lopez ("Officer Lopez"), Rudolfo Gomez ("Officer Gomez"), and Rafael Rivera ("Officer Rivera"). Goodlow testified on his own behalf. The pleadings on both of Goodlow's motions are closed, and the motions are now ready for resolution. A jury trial is scheduled to commence before Chief Judge Rudolph T. Randa on November 21, 2005.

## MOTION TO SUPPRESS PHYSICAL EVIDENCE

### Evidentiary Hearing Testimony

Based on all of the testimony presented at the evidentiary hearing, as well as the parties' post-hearing submissions, it appears that the facts relevant to Goodlow's motion to suppress physical evidence—the officers' entry into the Chambers Street residence, seizure of the firearm and drugs specified in the indictment, and arrest of Goodlow—are largely undisputed.

Officer Lopez testified that he received an anonymous tip that the Chambers Street residence was being used to traffic drugs and that a firearm would be found at that location. Based on this information, Officer Lopez decided to conduct a "knock and talk" investigation shortly thereafter. Officers Lopez, Gomez, and Rivera knocked on the front of the residence, identified themselves as officers, and asked to enter the residence. An individual named Charles Weaver ("Weaver") answered the door, said "alright" in response to the officers' request to enter, and stepped back to permit the officers' entry.

Officer Lopez, who was the first to enter the residence, immediately observed Goodlow coming out of one of the bedrooms carrying a large, clear bag of what Officer Lopez believed to be marijuana. Officer Lopez testified that, when he observed the bag of marijuana, Goodlow was standing approximately fifteen feet away, the room was well-lit, Goodlow was facing Officer Lopez, and nothing obstructed Officer Lopez's view. Goodlow testified that Officer Lopez might

2

not have had a clear view of him after entering the residence. Goodlow said that there was a television set between the bedroom door and the place in the living room where Officer Lopez was standing. In addition, Goodlow said that he was entering the bedroom, not exiting it, and that he was facing the bedroom rather than Officer Lopez. However, Goodlow did not dispute that he was carrying marijuana, and all of the witnesses agreed that, upon seeing Officer Lopez, Goodlow said "oh shit" and ran towards the nearest bedroom.

Officer Lopez pursued Goodlow to the doorway of the bedroom where he saw Goodlow put something under the bed mattress. Based on his observations, Officer Lopez took Goodlow into custody, and another officer escorted Goodlow to the living room. A woman who was sitting on the bed in the room that Goodlow entered was escorted to the living room as well. At that point, Officer Lopez returned to the bedroom to retrieve the object that Goodlow placed under the mattress, which he believed to be the bag of marijuana. To retrieve the object, Officer Lopez lifted the corner of the mattress. This revealed several baggies of marijuana, a scale, and a wallet that contained a photo identification card belonging to Goodlow. In addition, Officer Lopez observed the butt of a firearm on a shelf in a doorless closet. The firearm, which is specified in count one of the indictment, and a magazine were seized. Subsequently, the female that was removed from the bedroom indicated that all of the seized items belonged to Goodlow, and Goodlow was taken from the residence for further questioning.

Goodlow's Position

Initially, in his motion to suppress and evidentiary hearing request, Goodlow challenged that the legality of Weaver's consent based on the doctrine of apparent authority. However, in his post-hearing brief, Goodlow states that:

3

> [b]ased upon the evidence presented at the hearing, the defense concedes that the initial entry through the front door of the residence was indeed a legal entry based on consent. When police knocked on the front door, Charles Weaver answered it. Police then asked for permission to enter the residence so they could speak to the occupant(s). According to the testimony of Officer Lopez, Weaver consented to their entry. There was no evidence presented to suggest that consent was not valid. Therefore, the defense concedes this point.

(Goodlow Post-hrg. Br. at 7.). Accordingly, the issue of apparent authority will not be discussed further, and the court will turn its attention to whether Officer Lopez had legal justification to remove the marijuana and firearm that are specified in the indictment, after taking Goodlow from the bedroom. That is the sole issue argued in Goodlow's post-hearing brief, and Goodlow indicates that it is the "single most compelling question presented" to the court. In claiming that suppression is warranted, Goodlow submits that several exceptions to the warrant requirement—consent, exigent circumstances, protective sweep, and search incident to arrest—do not apply on these facts.

Analysis

In the opinion of this court, Officer Lopez's actions did not violate the Fourth Amendment, and there is no need to rely on the warrant exceptions cited by Goodlow. As an initial matter, it is important to clarify that Officer Lopez did not search the bedroom, as Goodlow states in his post-hearing brief. Officer Lopez testified that he lifted the corner of the mattress where he saw Goodlow place what he believed to be marijuana, and he observed the firearm in a doorless closet without any searching. Officer Lopez did not testify that he removed the entire mattress or looked in other places and compartments where contraband might generally be stored. The distinction between Officer Lopez's seizure and a full blown search is important because, under the plain view doctrine, an officer may seize items without a warrant if (1) the officer is lawfully positioned in the place from where he sees the object subject to seizure, (2) the officer has a lawful right of

4

access to the object itself, and (3) the object's incriminating nature is immediately apparent. United States v. Cotnam, 88 F.3d 487, 495 (7th Cir.1996)(citing United States v. Berkowitz, 927 F.2d 1376, 1388 (7th Cir.1991)). The incriminating nature of an object is immediately apparent if the officer has "probable cause to believe that the item is linked to criminal activity." United States v. Bruce, 109 F.3d 323, 328 (7th Cir.1997). In addition, the difference between lawfully positioned under the first element and lawful right of access under the second element is that the former refers to where the officer stands when the item is observed, and the latter to where the officer must be to retrieve the item. See Horton v. California, 496 U.S. 128, 137, n. 7 (1990).

The first and third elements cannot reasonably be disputed in light of the fact that Goodlow did not deny possession of marijuana and concedes that the officers' entry into the Chambers Street residence was consensual. In addition, the court finds the testimony of Officer Lopez credible concerning his recognition of the substance as marijuana based on its distinct characteristics and his experience as a law enforcement officer. The court also finds that Officer Lopez was justified in pursuing Goodlow to the bedroom because he did so in response to Goodlow's own actions, to prevent the destruction of evidence.

The second element of the plain view doctrine is also satisfied on these facts. When Officer Lopez first observed the marijuana in Goodlow's hand in the living room, there is no question that he had lawful right of access to the marijuana. Thus, at that moment, all three elements of the plain view doctrine were satisfied, enabling Officer Lopez to legally seize the marijuana. The legal authority for Lopez to seize the contraband cannot be defeated or frustrated by Goodlow's attempt to secret the marijuana underneath the mattress in the few seconds before Officer Lopez could apprehend him. Requiring Officer Lopez to get a warrant before lifting the mattress under these circumstances would essentially reward Goodlow's evasive conduct.

5

Moreover, the Fourth Amendment provides a "right of personal security against arbitrary intrusions by official power." Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971). Any arguable intrusion by Lopez was caused by Goodlow's own actions and was appropriately limited to retrieving the marijuana from the place Goodlow put it. Accordingly, the court will recommend that Goodlow's motion to suppress be denied.

## MOTION TO SUPPRESS POST-ARREST STATEMENT

In support of his motion to suppress his post-arrest statement, Goodlow initially asserted that: (1) the statement was derived from the officers' illegal entry and search of the Chambers Street residence and (2) Officer Gomez did not properly administer Miranda warnings prior to the statement. Goodlow's first claim was not pursued in his post-hearing brief and does not warrant suppression for all of the reasons discussed in regard to the motion to suppress physical evidence. In addition, Officer Gomez testified that he did not interview Goodlow until the day after his arrest and did so only after administering Miranda warnings. Because the court finds Officer Gomez to be a credible witness, it appears that Goodlow's statement may be sufficiently remote and distinguishable from the officers' actions at the Chambers Street residence to preclude suppression. Accordingly, the court will recommend that the motion to suppress be denied in this regard.

In regard to Goodlow's second claim, there is substantial factual dispute as to the events relevant to Goodlow's post-arrest statement to Officer Gomez. Goodlow testified (1) that he did not remember Officer Gomez advising him of the right to remain silent; (2) that Officer Gomez did not read Miranda warnings from a state issued advice of rights card; (3) that he gave a statement that Officer Gomez did not record; (4) that he signed the second statement, which is the statement of record, out of fear that persons he initially incriminated would retaliate against him;

6

(5) that the second statement is false; (6) that he told Officer Gomez his statement was false; and (7) that Officer Gomez threatened to leak the initial statement to persons incriminated therein if Goodlow did not sign the second statement. Officer Gomez denied all of these allegations and contended that all requirements of the Fifth Amendment were strictly followed.

For several reasons, the court agrees. First, while Goodlow's post-hearing brief recites some of his testimony, Goodlow does not compare his credibility to Officer Gomez's credibility and does not argue that suppression is warranted under his version of the facts. In addition, the court does not find Goodlow to be a credible witness. There is no evidence to substantiate Goodlow's claims that his statement was false, that he gave two statements, or that he felt coerced to sign the statement. In contrast, Officer Gomez testified that he read Goodlow <u>Miranda</u> warnings from a state issued advice of rights card, and Goodlow responded that he understood his rights and wanted to make a statement. Officer Gomez's testimony comports with regular police practices and is substantiated by the fact that the statement Goodlow signed also says that Officer Gomez advised Goodlow of his <u>Miranda</u> rights, that Goodlow understood his rights, and that Goodlow wished to make a statement. In addition, Goodlow's statement is quite detailed and is consistent with the testimony of all three officers that were at the Chambers Street residence. Moreover, Goodlow testified that this was the third time he had been arrested and advised of his <u>Miranda</u> rights. Goodlow did not claim that he sought clarification of his rights or question Officer Gomez's statements. Under these circumstances, it is reasonable to conclude that Goodlow understood his rights, was aware of the consequences of his statement, that his statement was not coerced, and that the statement was truthful. Accordingly, the court finds that the testimony of Officer Gomez reflects the events relevant to Goodlow's statement and will recommend that the motion to suppress be denied.

7

For all the reasons discussed, the court now enters the following recommendation on Goodlow's motion to suppress:

**IT IS THEREFORE RECOMMENDED** that Goodlow's motion to suppress evidence be **denied.**

**IT IS FURTHER RECOMMENDED** that Goodlow's motion to suppress his post-arrest statement be **denied.**

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this <u>3rd</u> day of November, 2005.

s/AARON E. GOODSTEIN
United States Magistrate Judge